UNITED STATES of America,
Plaintiff-Appellee,

v.

George Edward KILLIAN,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

George Edward KILLIAN and Robert
Brunk, Defendants-Appellants.

Nos. 79–5277, 79–5278.

United States Court of Appeals,
Fifth Circuit.
Unit A

March 9, 1981.

Rehearing Denied April 23, 1981.

Mario J. Martinez (Court-appointed), El Paso, Tex., for Killian in both cases.

Richard C. Robins, El Paso, Tex., for defendant-appellant in 79–5277.

Jamie C. Boyd, U. S. Atty., LeRoy Morgan Jahn, Asst. U. S. Atty., San Antonio, Tex., Mike McDonald, Jerry Tanzy, Trial Attys., El Paso, Tex., for U. S. in both cases.

Raymond C. Caballero (Court-appointed), El Paso, Tex., for Brunk.

Before WISDOM, GARZA and REAVLEY, Circuit Judges.

GARZA, Circuit Judge:

The appellants were tried before a jury on a three-count indictment, one count of conspiracy to possess cocaine with intent to distribute and two substantive counts in violation of 21 U.S.C. §§ 846, 841(a)(1) and 18 U.S.C. § 2. Robert Brunk was convicted on the conspiracy count and one substantive count while George Edward Killian was convicted on all three counts. The two appellants now raise a number of issues on appeal.

The evidence taken in the light most favorable to the government shows that Brunk obtained cocaine from an individual named Carl Lynn and that he in turn delivered it to Killian. Killian would then sell it to buyers on the street. In the instant case, Killian sold cocaine on two occasions to an undercover agent employed by the Drug Enforcement Administration (DEA). Killian was arrested immediately after the second sale. The evidence indicates that Brunk observed this arrest through a window in a nearby office. Brunk then contacted Lynn and agreed to repay him for the cocaine which was seized by the DEA agents. Brunk made the payments in cash and methamphetamines. Subsequently, when Lynn was arrested, he implicated Brunk. DEA agents obtained an arrest warrant for Brunk who allowed the agents to search his office. In an attache case found in Brunk's office, the agents found a pistol. DEA agents also found a small amount of cocaine on Brunk's person and traces of cocaine and methamphetamine at his apartment. While in custody awaiting trial and after obtaining the services of an attorney, the U.S. Attorney's Office issued an order for agents of the FBI to interview Brunk. Two interviews were conducted in which agents of both the FBI and DEA participated. Brunk's counsel was never made aware of these interviews.

Killian raises five grounds of error on appeal, all of which we find to be totally

without merit. First, Killian contends that the district court erred in holding that his participation in the conspiracy did not terminate upon his arrest. Apparently in the alternative, Killian argues that acts occurring after his arrest were the subject of a second conspiracy. Evidence was introduced at trial concerning Brunk's delivery of methamphetamines to Lynn in payment for the cocaine which was seized by DEA agents from Killian. Such evidence does not denote the existence of two conspiracies as Killian argues. The delivery of the methamphetamines was clearly a continuance of the single conspiracy charged in the indictment, since it was part and parcel of the agreement regarding the cocaine transaction.

■■■ Since the evidence introduced at trial related to one conspiracy, we must determine whether Killian's arrest terminated his involvement in the conspiracy. A member of a conspiracy continues to be responsible for acts committed by coconspirators even after the former's arrest unless he has withdrawn from the conspiracy. *United States v. Bradsby*, 628 F.2d 901, 905 (5th Cir. 1980); *United States v. Pearson*, 508 F.2d 595, 597 (5th Cir. 1975). In order to withdraw, a conspirator must show that he acted affirmatively to defeat or disavow the purpose of the conspiracy. *United States v. Wentland*, 582 F.2d 1022, 1025-26 (5th Cir. 1978), *cert. denied*, 439 U.S. 1133, 99 S.Ct. 1056, 59 L.Ed.2d 96 (1979). *See also United States v. Jimenez*, 622 F.2d 753, 755 (5th Cir. 1980) (to show withdrawal, defendant must demonstrate that he took affirmative acts inconsistent with the object of the conspiracy and communicated this in a manner reasonably calculated to reach his or her coconspirators). The burden of proving withdrawal from a conspiracy rests upon the defendant. *United States v. Bradsby*, 628 F.2d at 905. Killian has not borne this burden.

■■■ Killian next contends that the admission of certain hearsay evidence regarding incidents occurring after his arrest and his alleged termination in the conspiracy was a denial of his right to confrontation.

In light of our holding that Killian's arrest did not terminate his involvement in the conspiracy, we find no error in the introduction of the statements.

Third, Killian maintains that he was denied his right against self incrimination due to prosecutorial misconduct. Killian contends that the alleged error occurred during defense cross examination of a government witness. Counsel for Killian had been reading into evidence a statement made by a DEA agent regarding the incidents preceding the arrest of Killian. The prosecutor then objected, stating: "Your Honor, I object to the defendant testifying in this manner. This agent—" Record, Volume 6, at 513. At this point, Killian's counsel requested a bench conference to ask for a mistrial. At the bench conference, the prosecutor stated to the trial judge: "Your Honor, the objection is to allowing the defendant to—I'm sorry. This was not the defendant, was it?" Record, Volume 6, at 514.

■■■ Clearly the prosecutor made a mistake, and it is apparent that his objection was aimed at an attempt by the defense to impeach a government agent's testimony with that of another government agent. The trial judge denied the motion for mistrial and cautioned the jury that the defendant has no duty to produce any evidence at all in his defense. After a thorough reading of the above exchange, it is clear that the prosecution was not attempting to violate the defendant's right against self-incrimination. The court discerns no prejudice to the defendant in this case, especially in light of the court's speedy curative instruction on the matter.

■■■ Killian next argues that the court's granting of a continuance out of his presence was reversible error. Rule 43(a) of the Federal Rules of Criminal Procedure requires that a defendant be present "at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule."

Rule 43(c)(3), however, provides that a defendant need not be present at a conference or argument upon a question of law. In the instant case, the Judge's decision to continue the case occurred on the day the present trial was to begin, an earlier one having resulted in a mistrial. On that day, the court appointed new counsel to Killian upon his request and clearly desired to give that counsel sufficient time to prepare his case. We find that the district court's action fell within Rule 43(c)(3), and even if it had not, the action in no way prejudiced Killian.

Killian's final challenge attacks his trial counsel as being incompetent due to the latter's failure to present an entrapment defense. When dealing with a question regarding the competence of counsel, the court must determine whether a defendant's attorney was reasonably likely to render, and rendered, reasonably effective assistance. *United States v. Johnson*, 615 F.2d 1125, 1127 (5th Cir. 1980). The burden of proof is upon the defendant. *Marino v. United States*, 600 F.2d 462, 464 (5th Cir. 1979). Killian has not proven to this court that his trial counsel was in any way incompetent. In fact, reviewing the evidence in this case, it appears that an entrapment defense would have been doomed to failure from the beginning.

Brunk raises six issues on appeal. Brunk challenges the actions taken by the U.S. Attorney's Office, the FBI and the DEA in removing him from jail to question him in the FBI offices. Brunk contends that this violates the ethical principles of the legal profession. Brunk specifically cites to the Code of Professional Responsibility of the American Bar Association, specifically DR 7–104(A), which prohibits the communication by a lawyer with a party he knows is represented by a lawyer in the matter.

We agree that the conduct which occurred in this case was highly improper and unethical. Nonetheless, the statements that were transcribed and any evidence that might have been obtained from the statements were not introduced at trial. We, therefore, conclude that no prejudice attached to Brunk because of the improper

action. Suppression of the statements would probably have been the appropriate sanction in this case, were it not for the refusal of the government to use those statements.

Brunk suggests that such conduct should result in a dismissal of the indictment. Such a sanction is much too drastic and totally unnecessary. The use of similar tactics was recently attacked in the Supreme Court as being violative of a defendant's Sixth Amendment right to counsel. The Supreme Court held that dismissal of the indictment was inappropriate absent demonstrable prejudice or the substantial threat thereof. *United States v. Morrison,* —— U.S. ——, ——, 101 S.Ct. 665, 667–668, 66 L.Ed.2d 564 (1981). Applying a similar standard to an ethical attack upon such actions, we find that Brunk has not shown demonstrable prejudice to require the dismissal of the indictment. The action that was taken in this case is truly reprehensible and taints the dignity of the offices of the U.S. Attorney, the DEA and the FBI. Since no evidence obtained from these actions was used against or prejudiced Brunk, however, reversal is not necessitated in this case.

Brunk next challenges the trial court's decision after an *in camera* inspection to give Brunk only certain portions of the statements he made to the FBI and the DEA. Initially, we must note than an *in camera* inspection by a district judge is a reasonable procedure and is protective of the defendant's rights. *United States v. Buckley*, 586 F.2d 498, 506 (5th Cir. 1978), *cert. denied*, 440 U.S. 982, 99 S.Ct. 1792, 60 L.Ed.2d 242 (1979). It is also clear that a district court has the right after an *in camera* inspection to withhold evidence which is irrelevant or unexculpatory. *Id.; United States v. Baker*, 609 F.2d 134, 139 (5th Cir. 1980); *United States v. Johnson*, 577 F.2d 1304, 1309–10 (5th Cir. 1978); *United States v. Trevino*, 556 F.2d 1265, 1272–73 (5th Cir. 1977).

In Brunk's case, the district judge allowed disclosure of certain parts of

Brunk's statements, which had been transcribed on FBI Forms 302. The remainder was sealed by the district court. This court has thoroughly examined the statements, containing both the sealed and unsealed portions. It is our conclusion that the paragraphs withheld from the defendant by the court are totally irrelevant to the instant case. Further, they contain no exculpatory material regarding the government's case against Brunk and contain information which, if disclosed, may have interfered with the government's investigation in a totally unrelated case. In light of the foregoing, we find no error in the district court's decision which followed his *in camera* inspection.

■■■■ Brunk also contends that the contraband found on his person and in his office immediately following his arrest should have been suppressed due to the DEA agents' failure to take him before a federal magistrate without unnecessary delay as required by Rule 5(a) of the Federal Rules of Criminal Procedure. The delay in taking Brunk to a magistrate amounted to a period of ninety minutes. No illegal action was taken during that span of time. Once Brunk requested an attorney, no further questions were asked by the agents. Brunk freely gave his consent for the searches of his office and the attache case. The issue of delay is only a factor to be considered in determining the voluntariness of a defendant's statement or actions, and to render a consent involuntary or to require the suppression of evidence, the delay must be unnecessary. *See United States v. Corral-Martinez,* 592 F.2d 263, 267–68 (5th Cir. 1979). We find no unnecessary delay in the present case.

Brunk also challenges the government's introduction into evidence of pistols and cocaine retrieved from both Brunk's house and the dwelling of other co-conspirators, which discoveries occurred after the arrest of Killian. Brunk contends that such evidence prejudiced his defense and violated Rule 404(b) of the Federal Rules of Evidence. Rule 404(b) provides:

(b) Other crimes, wrongs, or acts.—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

■■■■ The introduction of the challenged cocaine, methamphetamines and pistols in this case is inextricably intertwined with the government's evidence regarding the main transaction. The introduction of this evidence was necessary to help prove the case against Brunk for his involvement in the conspiracy. In such cases, the evidence cannot be considered extrinsic, and Rule 404 does not apply. *See United States v. Aleman,* 592 F.2d 881, 885 (5th Cir. 1979).

■■■■ However, even if the evidence is considered extrinsic, it would still be admissible. Although extrinsic evidence may not be used to show bad character of a defendant, it may be used to show a defendant's opportunity, intent, plan and knowledge. *United States v. Witt,* 618 F.2d 283, 286 (5th Cir. 1980). In determining whether extrinsic evidence is admissible, a court must conduct a two-step analysis: 1) the extrinsic evidence must be relevant to an issue other than the defendant's character, and 2) the evidence must possess probative value that is not substantially outweighed by its undue prejudice. *United States v. Beechum,* 582 F.2d 898, 911 (5th Cir. 1978) (en banc), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). In other words, the extrinsic acts must be so linked together in point of time and circumstance with the crime charged that one cannot be fully shown without proving the other. *United States v. Aleman,* 592 F.2d at 885. In the present case, the extrinsic evidence was plainly linked in point of time. The possession of the contraband clearly showed motive and intent and was closely intertwined with both the cocaine sale involved here and Brunk's method of payment after Killian's arrest. The possession of the narcotics and pistols in this case was necessary

to prove in order to prove the conspiracy against Brunk.

Brunk raises two additional points of error, one regarding an allegedly untimely presentation of Jencks Act material and the other regarding the inclusion of an overt act concerning the delivery of methamphetamines by Brunk to Lynn. After reviewing the record, we find the Jencks Act challenge completely and totally without merit. The subject matter relating to the overt act has already been discussed, and we have concluded that the delivery of the methamphetamines in payment for the seized cocaine was part of the conspiracy charge. We, thus, reject this final challenge as wholly without merit, and we need discuss it no further.

AFFIRMED.