UNITED STATES of America, Plaintiff-Appellee,

v.

Howard L. WASLER, Defendant-Appellant.

No. 81–1279
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

March 15, 1982.

Rehearing Denied April 14, 1982.

---

Danny D. Burns, Ronald Aultman, Fort Worth, Tex., for defendant-appellant.

Jimmy L. Tallant, Asst. U. S. Atty., Fort Worth, Tex., for plaintiff-appellee.

Before BROWN, POLITZ and WILLIAMS, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

Howard L. Wasler appeals from his conviction for the unauthorized use of a loan extension form to receive a benefit from a Federal Credit Union, his employer, in violation of 18 U.S.C. § 1006.[1] Since we find

---

1. Federal credit institution entries, reports and transactions

Whoever, being an officer, agent or employee of or connected in any capacity with the

no merit in any of his assertions of error, we affirm.

## I. *Facts*

Wasler, the manager of the Federal Credit Union for the Teamsters Local 767, Arlington, Texas, fraudulently procured a loan extension by tricking members of the Credit Union's Credit Committee. Stating that he had "messed up" another person's extension agreement that the Committee already had approved, he got the members to sign another form in blank. Inserting his name and information about himself in the relevant spaces, he used that agreement to extend the time in which he was to pay off his personal loans to the Credit Union, loans totaling $7,546.10.

Wasler had outstanding loans from the Credit Union of approximately $800, $500, $4500 and $1800, for a total of $7,546.10. Although the record is rather unclear, it appears that he obtained the two largest loans without the approval of the Credit Committee—whether fraudulent or not, we cannot tell. Because the monthly payments were quite large (at least $340), Wasler's fraudulent extension, which reduced the monthly amount to $100, conferred a "benefit" upon him in violation of § 1006.

Thomas E. Merritt, of the Credit Union Credit Committee, testified that, although his signature appears on the agreement, he did not approve an extension for Wasler. He admitted that he signed in blank the agreement that Wasler used. William L. Holland, of the same committee, also testified that he had not authorized an extension agreement for Wasler.

Special Agent Lawrence M. Connelley of the Federal Bureau of Investigation testified that he interviewed Wasler in Sherman, Texas. He did not arrest Wasler or even plan to do so at that time, so Wasler was entirely free to come and go. Wasler understood the purpose of the interview and, in fact, brought his attorney with him to the Post Office Building in Sherman, although his counsel did not attend the questioning. Wasler was neither coerced nor forced to make a statement to Connelley. The Grand Jury indictment did not issue until later.

At that interview Wasler admitted making the loans from the Credit Union and preparing a fraudulent extension agreement. He explained his modus operandi, how he obtained the blank agreement already signed. Believing that his employment was in jeopardy due to a conflict with the Credit Union's management, Wasler used this opportunity to "get even".

The case came on for trial and the jury convicted Wasler on one count, and the judge sentenced him to 30 months' imprisonment.

## II. *Issues on Appeal*

Wasler presents four points on appeal. First, he argues that the Court erred in

Reconstruction Finance Corporation, Federal Deposit Insurance Corporation, National Credit Union Administration, Home Owners' Loan Corporation, Farm Credit Administration, Department of Housing and Urban Development, Federal Crop Insurance Corporation, Farmers' Home Corporation, the Secretary of Agriculture acting through the Farmers' Home Administration, or any land bank, intermediate credit bank, bank for cooperatives or any lending, mortgage, insurance, credit or savings and loan corporation or association authorized or acting under the laws of the United States or any institution the accounts of which are insured by the Federal Savings and Loan Insurance Corporation or by the Administrator of the National Credit Union Administration, or any small business investment company, with intent to defraud any such institution or any other company, body politic or corporate, or any

individual, or to deceive any officer, auditor, examiner or agent of any such institution or of department or agency of the United States, makes any false entry in any book, report or statement of or to any such institution, or without being duly authorized, draws any order or bill of exchange, makes any acceptance, or issues, puts forth or assigns any note, debenture, bond or other obligation, or draft, bill of exchange, mortgage, judgment, or decree, or, with intent to defraud the United States or any agency thereof, or any corporation, institution, or association referred to in this section, participates or shares in or receives directly or indirectly any money, profit, property, or benefits through any transaction, loan, commission, contract, or any other act of any such corporation, institution, or association, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

admitting evidence of extraneous offenses, namely, of the fraudulent loans. He argues that that evidence was admitted to prove bad character, a use that Fed.R.Evid. 404(b) prohibits. Rule 404(b) provides as follows:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

We have no doubts that the Court correctly allowed this evidence to show motive and intent. Had Wasler not managed to reduce his monthly payments, a default on the unauthorized loans might well have raised questions whose answers would have proven unpleasant, to say the least, for the Credit Union manager.

■■ In *U. S. v. Killian*, 639 F.2d 206, 211 (5th Cir. 1981), *cert. denied*, —— U.S. ——, 101 S.Ct. 3014, 69 L.Ed.2d 394 (1981), we discussed Fifth Circuit precedent on this question. In general, extrinsic evidence is admissible (1) if it is relevant to an issue other than a defendant's character, and (2) if it possesses probative value that is not substantially outweighed by its undue prejudice. *U. S. v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (en banc), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). As this evidence was "inextricably intertwined" with Wasler's fraudulent extension, *Killian*, 639 F.2d at 211, and establishes motive and intent, issues whose importance outweighs whatever prejudicial effect the evidence might have, we hold that the District Court did not err in admitting it.

Wasler also contends that the Court erred in admitting his oral statements to Agent Connelley since he had not received *Miranda* warnings. We disagree. *Miranda* warnings were not given, it is true, but for a good reason: Free to come and go, Wasler was not in custody, so *Miranda* and its progeny do not apply. "But, absent custodial investigation or interrogation, the *Miranda* warnings are not necessarily required. This is so since, except possibly in some extremely rare case which we need not attempt to hypothesize here, absent custody the element of coercion disappears." *U. S. v. Carollo*, 507 F.2d 50, 51–2 (5th Cir.), *cert. denied*, 423 U.S. 874, 96 S.Ct. 143, 46 L.Ed.2d 105 (1975).

■ We determine the nature of "custody" on a case-by-case basis, *Carollo, supra*. Four factors govern: (1) probable cause to arrest, (2) subjective intent of the police to hold the suspect, (3) subjective belief of the defendant as to the status of his freedom, and (4) focus of the investigation. *U. S. v. Nash*, 563 F.2d 1166, 1168 (5th Cir. 1977). While the government concedes that the investigation had focused on Wasler at the time of the interview, none of the other three factors was present. The record does not indicate that probable cause to arrest yet existed. Wasler was free to come an go and was not under arrest. He attended the meeting with the FBI voluntarily. There was "no objective, reasonable ground for him subjectively to believe that he was in custody." *U. S. v. Micieli*, 594 F.2d 102, 106 (5th Cir. 1979).

Wasler also alleges that his counsel and the FBI agent had agreed that the agent would take no incriminating statements in the absence of counsel.[2] This frivolous contention finds no support in the record.

■ Next, Wasler claims that he lacked effective assistance of counsel because his

2. Wasler refers us to the following excerpt from the trial transcript:

Q.  Was there ever any—did I ever tell you at any time that—not to take any written statement from him or to take any statement that was going to be used against him?
A.  Did you ever tell me not to? Not that I recall, no.

How Wasler can interpret this ambiguous if not incomprehensible exchange as demonstrating an agreement between counsel and the FBI, we are at a loss to tell. We have no difficulty, however, in concluding that the exchange supports no such agreement and, therefore, that Wasler's statement to the FBI was admissible.

lawyer attacked his attitude and disclosed privileged information to the sentencing judge. The record belies these much-exaggerated claims. Counsel, rather than "berating" him in closing argument, made an eloquent plea for leniency based on Wasler's emotional problems. Even if that defense were ill-chosen, we have repeatedly held that a defendant has the constitutional right to effective but not errorless counsel. *U. S. v. Alvarez*, 580 F.2d 1251, 1254 (5th Cir. 1978); *see also Baty v. Balkcom*, 661 F.2d 391, 394 (5th Cir. 1981); *U. S. v. Burroughs*, 650 F.2d 595, 598 (5th Cir. 1981). Here on this record counsel fulfilled his ethical duty of representation in good fashion.[3]

██ Finally, Wasler argues that counsel breached his duty by disclosing privileged information to the judge—a serious charge which finds no support in the record. Counsel merely told the judge that Wasler had been uncooperative and "a difficult client". Those remarks, taken out of context, might appear to support his argument, but we are convinced from our review of the record as a whole that they were but part of counsel's trial strategy to seek leniency from the sentencing court. Moreover, counsel's statements did not deal with the substance of any matters discussed in the course of legal representation, and so do not qualify for the privilege in the first place.

Finding no merit in any of Wasler's allegations of error, we affirm.

AFFIRMED.

---

**3.** The record shows that counsel participated effectively at pre-trial, trial and sentencing proceedings. Before Wasler had even returned to Texas, the lawyer appeared for trial. He filed a motion for a continuance; presented both an opening and closing argument; examined prospective jurors on voir dire and struck 11 names; cross-examined and recross-examined government witnesses; filed motions for mistrial, for acquittal and for dismissal of the indictment. He examined Wasler on direct and redirect examinations; he objected to the introduction of government evidence on numerous occasions; he made a plea for leniency at sentencing, and filed a timely notice of appeal.