**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Arlan Lamar ROBINSON,
Defendant-Appellant.**

No. 82–4087.

United States Court of Appeals,
Fifth Circuit.

Feb. 28, 1983.

Michael S. Fawer and Ronda Claire Lustman, New Orleans, La., for defendant-appellant.

James B. Tucker, Asst. U.S. Atty., Jackson, Miss., H. Marshall Jarrett, Atty., Crim. Div., Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before CLARK, Chief Judge, THORNBERRY and POLITZ, Circuit Judges.

POLITZ, Circuit Judge:

Arlan Lamar Robinson, convicted by a jury of one count of extortion under the Hobbs Act, 18 U.S.C. § 1951[1] (Count I), and two counts of misrepresentation under 18 U.S.C. §§ 1001, 2[2] (Counts IV and V),

---

1. Section 1951(a) reads:

Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

"Extortion" is defined in § 1951(b)(2) as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."

2. Section 1001 reads:

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than

appeals, challenging the sufficiency of the evidence, various evidentiary rulings and the court's instruction on immunity. Finding no reversible error on Counts IV and V, we affirm. Finding the record incomplete as to Count I, we remand with instructions.

### Background Facts

Robinson, Supervisor for District Five, Harrison County, Mississippi, was indicted on five counts charging that he had abused his office for personal gain.[3] The Hobbs Act conviction involved water wells. John Braden, owner of Braden Pump and Well Service, was called in November 1978 to repair a well located in a county barn. When his efforts failed, Braden advised the Board of Supervisors that the county needed a new well.

Braden testified that Robinson contacted him and urged a private meeting at which Robinson insisted, as a condition for Braden's getting the county contract on the new well, that Braden also drill a well on Robinson's farm. According to Braden, Robinson stated: "Now, John, you can do this well if you'll figure it for enough to include your drilling a well up at my farm in Stone County for me." The old county well was only 400 feet deep, but Robinson reportedly told Braden to submit specifications for twice that depth in order to cover Robinson's new well, and to explain the greater depth by reference to other wells near the county barn which were 800–900 feet deep. The Board of Supervisors sought emergency bids and eventually awarded the contract to Braden.

Braden testified that he planned to avoid Robinson's scheme by drilling the county well to 800 or 900 feet, thereby using all of the county pipe and funding, leaving none for Robinson's well. But the drilling subcontractor ignored such instructions and stopped drilling the county well at 360 feet when water was reached. Braden testified that this turn of events left him no choice but to yield to Robinson's persistent urging and drill his well. Braden completed the Robinson well in January 1979, billing Robinson only $837.15, representing the excess cost over the county bid. Robinson thus saved several thousand dollars. Braden also repaired another well owned by Robinson, using a rebuilt pump from the original county well.

Counts IV and V charged that two Harrison County employees, Robert Daniels and Lennis Hudson, performed private farming and construction work on Robinson's farm while drawing a salary from the county made up in part from federal antirecession funds. The funds, authorized under the Intergovernmental Antirecession Assistance Act of 1977, 42 U.S.C. § 6721 *et seq.*, were provided to avoid layoffs of county employees and were not intended for private use.

Daniels was hired as a heavy equipment operator for the county. He testified Robinson told him to say that he was a night watchman at a gravel pit near the Robinson farm. Daniels performed private farm work, including roadbuilding with county equipment, for three years after becoming employed by the county. Daniels estimated that during that period he worked only three months doing county work; the remainder of the time was spent working on Robinson's farm. Robinson personally delivered the county paychecks to Daniels at the farm.

Hudson was ostensibly employed as a grader operator for Harrison County. During one two-year span, 1977–79, he labored fulltime doing farm and construction work for Robinson under the latter's personal direction. In doing this work he used county equipment. Hudson testified that he did

---

$10,000 or imprisoned not more than five years, or both.

Section 2 reads:

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, entices or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

**3.** The jury acquitted Robinson on Counts II and III, which had alleged, like Count I, acts of extortion in violation of the Hobbs Act.

not work in the gravel pit during this time, except on occasional trips to get gravel for the foundation of Robinson's barn. Other witnesses confirmed that both Hudson and Daniels were working for Robinson during this period.

### Sufficiency of the Evidence

■ Viewing the evidence in the light most favorable to the government, *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), and accepting all credibility choices and reasonable inferences the jury could have made to support its verdict, an appellate court may reverse only upon concluding that a reasonable jury would have been compelled to find that guilt was not proven beyond a reasonable doubt. *E.g., United States v. Saxton,* 691 F.2d 712 (5th Cir.1982).

■ Robinson argues initially that the evidence falls short of factual sufficiency since Braden's testimony conflicted with the testimony of others and, at times, his own recollections. The jury was entitled to credit Braden's testimony over that of other witnesses. And since we must resolve credibility choices and inferences in favor of the jury's finding, we conclude that the jury was entitled to credit Braden's general credibility over his precise recollection of specific facts. Moreover, objective evidence, including a telephone log notation and the bill for Robinson's redrilled and replaced well charging only $837.15 and marked "for well repair," is consistent with Braden's testimony.

■ Robinson's challenge appears to ascribe the fraudulent conduct to Braden. This thesis was urged during cross-examination of witnesses and during argument to the jury. Implicit in the conviction is the jury's rejection of this defense—a choice we are not persuaded to overturn. The evidence need not exclude every reasonable hypothesis of innocence or be consistent only with a finding of guilt, since a jury is free to choose among reasonable constructions of the evidence. *United States v. Saxton,* 691 F.2d at 714.

■ Robinson also argues that the evidence is legally insufficient, urging that he had no actual power to control the bidding or award the contract. But more critical to an extortion attempt under the Hobbs Act is the reasonable belief of Braden that he would suffer economic harm if he failed to cooperate with Robinson. *United States v. Quinn,* 514 F.2d 1250 (5th Cir.1975), *cert. denied,* 424 U.S. 955, 96 S.Ct. 1430, 47 L.Ed.2d 361 (1976). Braden testified that he felt he had to participate in Robinson's scheme when it was proposed and that his subsequent efforts to avoid the scheme backfired. As with the factual sufficiency claim raised above, the jurors were informed of the relevant standards and their duty in this regard. The jury's serious performance of that duty is underscored by the acquittals on two counts. We conclude that the government produced evidence sufficient to support Robinson's conviction under the Hobbs Act.

■ The evidence is also sufficient to support the two convictions under 18 U.S.C. §§ 1001 and 2. Robinson concedes for the purposes of this appeal that Daniels and Hudson performed personal work on county time but argues that the government did not show the specific weeks in which federal funds were used nor prove actual concealment. The record establishes, however, that both men were paid by the county using federal funds during the general periods charged. Further, it cannot be gainsaid that Robinson's conduct, including his directions to the two workers that they lie about their assignments, gave rise to a reasonable inference of attempted active concealment, despite the number of people in the county who, according to Robinson, knew about the scheme.

### Admissibility of Notes

On appeal Robinson objects to the admission and use of a page of handwritten notes, called the "Emerson notes" after their author, William Emerson, who regularly made such notes at meetings of the Board of Supervisors for his own use in his role as county purchasing clerk. The spe-

cific notes in question contained information concerning the new county well.[4]

The notes were introduced through T.J. Eure, the county's comptroller. The notes were attached to a packet of county documents introduced through Eure, who was qualified as county records custodian.[5]

■ We conclude that these notes may not be considered "records of regularly conducted activity," admissible under Rule 803(6), Federal Rules of Evidence,[6] absent a showing that Emerson regularly compiled them as part of his official duties. Eure's testimony verifying Emerson's note-taking habit may suffice to bring the notes under Rule 803(6), see *United States v. Colyer*, 571 F.2d 941 (5th Cir.1978); *Coughlin v. Capitol Cement Co.*, 571 F.2d 290 (5th Cir.1978), but authentication alone is not enough. For the notes to be admissible under Rule 803(6), the government also had to establish that "it was the regular practice of that business

activity" to have the notes made. This was not done.

■ Our conclusion that the Emerson notes should not have been admitted does not terminate the inquiry and mandate reversal. We must consider the impact of this evidence on the essential fairness of the trial. "[I]t is necessary to review the facts of the case and the evidence adduced at trial" to determine the effect of the erroneous admission "upon the conduct of the defense." *Fahy v. Connecticut*, 375 U.S. 85, 87, 84 S.Ct. 229, 230, 11 L.Ed.2d 171 (1963), *quoted in Harryman v. Estelle*, 616 F.2d 870, 876 (5th Cir.) (en banc), *cert. denied*, 449 U.S. 860, 101 S.Ct. 161, 66 L.Ed.2d 76 (1980).

■ The information contained in the notes came before the jury in properly-admitted documentary evidence and through the testimony of various witnesses, including Eure, who read into the record the official minutes of the meeting of the supervisors.[7] Admission of the notes did not

---

4. The relevant portion of the notes reads:
 $5500 *Emerg.* New Well [at] Success Barn 600' 4"—Arlan stated he will call & have someone do it.—No quotes required—New info—received 3 quotes—see P.O. 12323.

5. The notes were also used earlier during cross-examination of Robinson. At that time the government attempted to introduce the notes, but Robinson's attorney insisted that they were already in evidence, as Defendant's Exhibit 2. Later the attorney objected to the notes for insufficient foundation, stating that the page "has never been identified by anybody, never offered through anybody who prepared the document . . . ." With Eure on the stand subsequently establishing the factual background of the notes and Emerson's note-taking conduct, Robinson's attorney renewed his complaint that the notes were being identified by and introduced through Eure rather than Emerson.

6. Rule 803(6), often called the "business records exception" for its originally-limited reach, excepts from hearsay proscriptions:
 A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian

or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

7. These minutes read:
 THERE came on this day for consideration by the Board of Supervisors the matter declaring that an emergency exists and it is necessary to install a water well and pump, and after due consideration and discussion Supervisor ARLAN ROBINSON moved the adoption of the following Order:
 ORDER DECLARING AN EMERGENCY EXISTING AND ORDERING EXPENDITURES FOR INSTALLING A WATER WELL, PUMP AND TANK NOT TO EXCEED FIVE THOUSAND FIVE HUNDRED DOLLARS, HARRISON COUNTY, MISSISSIPPI
 WHEREAS, Supervisor District 5 reported that the pump and water well at District 5 Office at Success was out of order; and
 WHEREAS, it is absolutely necessary that water facilities be available in the interest of the health and welfare of the personnel employed; and
 WHEREAS, the Board of Supervisors does hereby find and determine as follows:
 1. That an emergency exists to install a water well and pump urgently required at the

prejudice Robinson by changing the theory of his defense or by forcing him into an unwanted defense. *See Harryman v. Estelle,* 616 F.2d at 877. The fact that the notes were taken and were introduced had no effect on the other evidence which overwhelmingly supported the jury's verdict. As a consequence, admission of the Emerson notes constituted harmless error.

### Refusal to Instruct on Defense "Theory"

Robinson maintains that the trial court erroneously declined to give his proposed instruction, entitled "Theory of the Defense," in its charge to the jury and that such a refusal constitutes reversible error.

■■■■■ A defendant is usually entitled to have the court instruct the jury on the defense's "theory of the case." *United States v. Conroy,* 589 F.2d 1258, 1273 (5th Cir.1979), *cert. denied,* 444 U.S. 831, 100 S.Ct. 60, 62 L.Ed.2d 40 (1980). This does not mean that any suggested instruction bearing the defense theory label must be given. The trial court may decline a suggested charge which incorrectly states the law, is without foundation in the evidence, or is stated elsewhere in the instructions. Further, the positing of a charge as the defendant's theory of the case does not automatically secure for the defendant a judicially narrated account of "his" facts and legal arguments. *United States v. Bush,* 599 F.2d 72 (5th Cir.1979) (*quoting United States v. Barham,* 595 F.2d 231 (5th Cir.1979)).

Robinson's proposed charge falls within the ambit of *Barham* and *Bush.* The trial

Beat 5 Office, and that the lack of such repairs is creating a health problem, and that such repairs are necessary to correct the unsafe condition.

2. That said repairs should be made without the necessity of advertising for bids because of the urgency thereof.

3. That said repairs should be authorized to be made at a cost not to exceed $5,500.00; it is, therefore,

ORDERED BY THE BOARD OF SUPERVISORS AS FOLLOWS:

SECTION 1: That an emergency exists to install a water well and pump which are urgently required at Beat 5 Office to correct a health problem and unsafe condition.

judge did not commit reversible error in declining that charge.

### Instruction on Immunity

■■■ The trial judge commented to the jury that he had not granted immunity to any of the witnesses, including a formal charge that advised:

I've heard much talk before this Court about somebody having immunity. I want to state to this Jury that I have not been consulted and have not entered any kind of order at anybody's request giving anybody immunity in this case. So I say that nobody in this case has legal immunity.

Robinson's attorney questioned some of the government's witnesses concerning promises of immunity offered for their testimony, establishing that some witnesses received, or understood that they were to receive, informal immunity from prosecution. The judge's comments may be factually incorrect if they are understood to mean that no immunity, formal or informal, was given. Robinson argues that the comments undermined his cross-examination on the subject.

All but the last of these comments were prompted by Robinson's counsel, who stated several times that "for the record, under § 6002 and § 6003 only Your Honor, upon their request, may grant an immunity." Counsel emphasized that any immunity given may not have been formally or properly granted, apparently in an effort to put into question before the jury the government's

SECTION 2: That because of the urgency of said situation, said repairs are hereby authorized without the necessity of advertising for bids.

SECTION 3: That said repairs be, and the same are hereby authorized to be completed at a cost not to exceed $5,500.00.

Supervisor WILLIAM J. McDONALD seconded the adoption of the said Order, whereupon, the President put the question to a vote with the result that all Members of the Board, present on this day, voted in the affirmative. The President then declared the motion carried and the Order adopted.

procedures and conduct with their witnesses. We do not view the judge's comments as "invited error," *see United States v. Gray*, 626 F.2d 494 (5th Cir.), *cert. denied*, 449 U.S. 1038, 101 S.Ct. 616, 66 L.Ed.2d 500 (1980), since the judge's final charge may be seen as taking counsel's suggestion one step further in implying that, factually, no immunity was given. Nonetheless, counsel's comments are relevant to our determination of how the jury would likely understand the immunity issue and interpret the judge's comments regarding his role and involvement.

We are convinced that the jury was not confused by the issue of immunity or the judge's comments. Most of the immunized witnesses testified only as to the two counts on which Robinson was acquitted. Robinson's attorney had ample opportunity to explore possible bias and in fact acted upon the opportunity with vigorous questioning which revealed the government's activities and promises. *Cf. United States v. Hall*, 653 F.2d 1002 (5th Cir.1981) (reversing trial judge for preventing exploration of the immunity issue). No justified claim can be made that counsel was thwarted in his effort, and the record and jury's disposition reflect that the effort was not negated by the judge's comments. We would expect reasonable jurors to believe that it is the witness's *understanding* rather than the technical status of formal immunity, or the judge's role in the matter, which is relevant to the issue of credibility. This jury apparently so believed.

In the context of counsel's exploration of the issue and assertions regarding official immunity, the judge's comments may not reasonably be taken as indicting counsel's credibility on the issue. We find the charge as a whole and in the trial context to be neither misleading nor prejudicial, *see United States v. Bartlett*, 633 F.2d 1184, 1189 (5th Cir.), *cert. denied*, 454 U.S. 820, 102 S.Ct. 104, 70 L.Ed.2d 91 (1981), and conclude that no reversible error was committed.

### *Admission of "Similar Acts" Testimony*

The government called John Baltar, a land speculator, to testify concerning an incident with Robinson three years before the matters charged in the indictment. Over the objection of Robinson's attorney, Baltar testified that Robinson had contacted him to discuss the county's proposed purchase of his property for a new road which would create valuable corners. Baltar testified that Robinson conditioned the purchase upon Baltar's giving him three acres of the property on one of the corners. Baltar refused, eventually selling the land to the county, after redistricting, through a different supervisor.

Robinson argues that Baltar's testimony should have been excluded as improperly placing evidence of extrinsic offenses before the jury, under Fed.R.Evid. 404(b). That rule makes evidence of "other wrongs" inadmissible to prove character but allows its use to show such factors as motive, opportunity, intent and plan.[8] The evidence must be relevant to an issue other than propensity, *United States v. Beechum*, 582 F.2d 898 (5th Cir.1978) (en banc), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). Robinson urges that Baltar's testimony related only to Robinson's character and was thus inadmissible. Under the *Beechum* analysis, however, the evidence may be used to show Robinson's intent if it is: (1) relevant to the charged crime, and (2) not unfairly prejudicial.[9]

---

**8.** Rule 404(b), entitled "Other crimes, wrongs, or acts," reads:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

**9.** *Beechum* teaches that "the second step of the analysis required by rule 404(b) [is] whether the evidence satisfies rule 403." 582 F.2d at 913. Fed.R.Evid. 403 prescribes in pertinent part: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ."

Initially, we find the evidence developed through Baltar sufficient to establish the "other act." *Beechum* considers the "other act" to be established when the jury could reasonably so find. *Id.* at 913. That test is met on this record. Moreover, the incident with Baltar is sufficiently similar to the extortion attempts charged under the Hobbs Act to be probative on the disputed issue of Robinson's intent. It is relevant in the evaluation of Robinson's testimony that he paid Braden for drilling the well on his farm and to the question whether Robinson misused his office for personal gain.

Finding the evidence relevant does not end our inquiry, for we must overlay the second part of the *Beechum* rubric and determine whether its probative value is substantially outweighed by the danger of unfair prejudice. In making this overlay we, unfortunately, are not aided by an on-the-record analysis of the probative value/prejudice issue by the trial judge.

An express scaling on-the-record of probative value and prejudice would tend to ensure appropriate consideration at trial of all relevant factors, establish the basis for the court's ruling, and provide the needed record for proper appellate review. On-the-record findings and conclusions would thus further the efforts of both the trial and appellate court to follow the Rule 404(b) analysis mandated by *Beechum*.

In *United States v. Preston*, 608 F.2d 626 (5th Cir.1979), *cert. denied,* 446 U.S. 940, 100 S.Ct. 2162, 64 L.Ed.2d 794 (1980), we held that a trial court "must make an on-the-record finding that the probative value of admitting a prior conviction outweighs its prejudicial effect before admitting a non-609(a)(2) prior conviction for impeachment purposes under Rule 609(a)(1)." *Id.* at 639. The concerns discussed in *Preston* are pertinent to our instant inquiry for evidence of extrinsic offenses is to be used only with the caution commanded.

Since *Preston,* we have frequently considered the application of Rule 404(b) to extrinsic offense evidence.[10] We have never specifically addressed the question whether *Preston*'s requirement of an on-the-record determination of prejudice under Rule 609 must be applied in a Rule 404(b) setting. We conclude that the intendment and purpose of the prejudice elements in Rules 609 and 404(b) are sufficiently akin to warrant in Rule 404(b) cases an on-the-record articulation by the trial court of *Beechum*'s probative value/prejudice inquiry when requested by a party.[11] In the absence of on-the-record findings in response to such a request, we will be obliged to remand unless the factors upon which the probative value/prejudice evaluation were made are readily apparent from the record, and there is no substantial uncertainty about the correctness of the ruling. *Shows*

10. These cases fall into separate categories. In some it appears that the trial court expressly outlined the *Beechum* analysis, and the decision was affirmed as within the trial court's discretion. *E.g., United States v. Wilkes,* 685 F.2d 135 (5th Cir.1982); *United States v. Emery,* 682 F.2d 493 (5th Cir.1982); *United States v. Renteria,* 625 F.2d 1279 (5th Cir.1980). *Cf. United States v. Guerrero,* 650 F.2d 728 (5th Cir.1981) (evidence clearly inadmissible under *Beechum* ). In others, it appears that the trial court did not articulate its reasoning, but on appeal we made the *Beechum* analysis and found the evidence admissible. *E.g., United States v. Clemons,* 676 F.2d 122 (5th Cir.1982); *United States v. Wasler,* 670 F.2d 539 (5th Cir.1982). And in other cases in which we affirmed rulings on admissibility it is not clear whether the trial court made an initial determination or not. *E.g., United States v. Phillips,* 664 F.2d 971 (5th Cir.1981), *cert. denied, —— U.S. ——, 102 S.Ct. 2965, 73 L.Ed.2d 1354*

(1982); *United States v. Killian,* 639 F.2d 206 (5th Cir.), *cert. denied,* 451 U.S. 1021, 101 S.Ct. 3014, 69 L.Ed.2d 394 (1981); *United States v. Benton,* 637 F.2d 1052 (5th Cir.1981); *United States v. Green,* 634 F.2d 222 (5th Cir.1981); *United States v. Ible,* 630 F.2d 389 (5th Cir. 1980).

11. Although focused primarily on the probative value/prejudice weighing, it is apparent that the other elements in the *Beechum* test are so interwoven that those elements necessarily will be considered. *See* 582 F.2d at 914.

Since *Beechum* requires that the Rule 404(b) analysis include the otherwise-discretionary prejudice determination under Rule 403, we do not address the necessity of on-the-record determinations on *general* questions of probity and prejudice under Rule 403. *See Preston,* 608 F.2d at 639 n. 16.

*v. M/V Red Eagle*, 695 F.2d 114 (5th Cir. 1983).

Review of the record leads to uncertainty concerning the admissibility of Baltar's extrinsic offense testimony. Robinson's attorney moved *in limine* for exclusion of this testimony, repeating his objection when Baltar was called to the stand by the government, and requesting an opportunity to be heard. The objection was overruled without discussion and without explanation. There was no inquiry into the prejudice-probity contrast. As a consequence, we cannot determine whether *Beechum* is satisfied.

The uncertainty in the record requires a remand for further consideration by the trial judge. The judge is to determine whether the evidence's prejudicial effect outweighed its probative value and, if so, whether there is a reasonable possibility that this evidence affected the outcome of the case. This determination by the trial court on remand may be readily made, for the judge is cognizant of all necessary facts. No undue delay should be experienced. We intimate no suggested resolution, entrusting this matter initially to the trial judge.[12]

### Sentencing

 As his final assignment of error Robinson attacks the 14-year sentence and $30,000 fine imposed under the three convictions. A strict standard of review applies to a trial court's decision on sentencing. "Absent an illegal sentence or a gross abuse of the trial judge's broad discretion, we will not disturb a sentence on appeal." *United States v. Noll*, 600 F.2d 1123, 1130 (5th Cir.1979). Robinson has the burden to show that at the time of sentencing the court abused its discretion or relied upon materially untrue information. *United States v. Garcia*, 693 F.2d 412 (5th Cir.1982). That burden has not been met.

The convictions on Counts IV and V are AFFIRMED. The matter is REMANDED WITH INSTRUCTIONS as to Count I.

---

12. The trial judge shall certify to us his findings and conclusions. The record shall be supplemented by the on-the-record determination herein prescribed, and by any materials submitted by the parties to the district court. Following such filing, the clerk will set a schedule for supplementary briefing and the matter will be returned to this panel for disposition.

The convictions under §§ 1001, 2 (Counts IV and V) will stand affirmed, irrespective of the ultimate disposition of Count I. Baltar's testimony related specifically to the three Hobbs Act charges, only one of which is before us today. The effect of this evidence on Counts IV and V is merely peripheral; to the extent it may there have been considered, its impact can only be harmless, given the overwhelming evidence of guilt. *See Harryman v. Estelle.* Further, we are convinced that this jury properly understood its duty to consider each count separately and on its own merits, as reflected by the two acquittals. We find no reversible error in any assignments of error on Counts IV and V.