**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Leslie TOOKER, Jr.,**
**Defendant-Appellant.**

**No. 83–1637.**

United States Court of Appeals,
Fifth Circuit.

Dec. 3, 1984.

Rehearing Denied Jan. 2, 1985.

---

Leslie Tooker, Jr., pro se.

A.W. Arnold, III, Dallas, Tex., Court-appointed, for defendant-appellant.

James A. Rolfe, U.S. Atty., Harry Koch, Asst. U.S. Atty., Dallas, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, JOHNSON, and WILLIAMS, Circuit Judges.

JOHNSON, Circuit Judge:

Defendant Leslie Tooker, Jr., appeals from the district court's denial of his motion under Fed.R.Crim.P. 35(b) for reduction of sentence. Tooker received a sentence of two consecutive two-year terms of imprisonment and a $100,000 fine after he pleaded guilty to a two-count information charging that he unlawfully attempted to export arms in violation of 22 U.S.C. § 2778.[1] Finding no abuse of the district court's discretion in its denial of the motion for reduction of sentence, we affirm the judgment of the district court.

## I. *Background*

Tooker was arrested at Dallas-Fort Worth Regional Airport on February 15, 1983, when he attempted to board a flight to London, England, with twenty-four night vision devices, which, under 22 C.F.R. § 121.01 (1984), are classified as munitions of war. Tooker had failed to comply with the licensing provisions for exporting these munitions as required by 22 U.S.C. § 2778(b).[2] The attempted export formed the basis of Count 2 of the information, and Tooker's negotiation with South Africa concerning the export of bomb parts formed the basis of Count 1.

Tooker pleaded guilty to both counts as part of a plea bargain in exchange for the Government's promise not to bring additional charges of customs law violation relating to the same transactions. The district court accepted Tooker's plea and ordered a presentence investigation. A presentence investigation report was prepared by the United States Probation Office and made available to Tooker and his counsel prior to the sentencing proceeding. At sentencing, defense counsel took exception to the presentence report's evaluation of the severity of Tooker's offense. According to Tooker's counsel, the United States Probation Office erroneously assigned an offense severity factor of "8"—a classification usually assigned to offenses such as treason. The district court sentenced Tooker to the maximum term of imprisonment (two years on each count) on March 25, 1983.[3]

With the assistance of counsel, Tooker thereafter filed a Rule 35 motion on June 9, 1983. The motion alleged that the court's assessment of the maximum term of imprisonment was influenced by bond having been set at $1,000,000 and the presentence report's classification of Tooker's offenses in Category 8. Tooker further contended that both the amount of bond and the severity category were based upon erroneous assumptions. Tooker also maintained that the presentence report contained erroneous information regarding his prior travels in that the report stated that he had traveled to Russia. Tooker assert-

---

1. 22 U.S.C. § 2778(c) provides:

    Any person who willfully violates any provision of this section or section 2779 of this title, or any rule or regulation issued under either section, or who willfully, in a registration or license application or required report, makes any untrue statement of a material fact or omits to state a material fact required to be stated therein or necessary to make the statements therein not misleading, shall upon conviction be fined not more than $100,000 or imprisoned not more than two years, or both.

2. 22 U.S.C. § 2778(b)(1) states in part:

    As prescribed in regulations issued under this section, every person (other than an officer or employee of the United States Government

acting in an official capacity) who engages in the business of manufacturing, exporting, or importing any defense articles or defense services designated by the President under subsection (a)(1) of this section shall register with the United States Government agency charged with the administration of this section, and shall pay a registration fee which shall be prescribed by such regulations....

3. Although Tooker received the maximum term of imprisonment, he did not receive the maximum fine. The district court could have fined Tooker an additional $100,000. *See* 22 U.S.C. § 2778(c).

ed that he had never traveled to the Soviet Union, but that his passport contained a Greek visa (or stamp) which was apparently mistaken as Russian by the probation officer who prepared the report. The motion also alleged that the bomb parts deal never passed the stage of preliminary negotiations and that the Republic of South Africa, a friendly ally of the United States, was the contemplated destination of the bomb parts. The motion also stated that Great Britain was the contemplated destination of the night sights and that the sights were items readily available on the open market. Tooker offered correspondence and telex messages in support of these claims. The motion further asserted that the district court had assumed that Tooker's dealings implicated national security concerns and that the above information undercut the court's erroneous assumption. According to Tooker, neither South Africa nor Great Britain represented the type of risk to American security that would justify treating the export of weapons to that country as treason. On August 1, 1983, Tooker filed a *pro se* amendment to the motion of June 9. In his amendment, Tooker urged the court to act under the newly amended Fed.R.Crim.P. 32(c)(3)(B). On August 30, 1983, the court denied Tooker's motion without conducting a hearing.[4]

On appeal, Tooker maintains that the district court erred in denying his Rule 35 motion and that the amended provisions of Rule 32(c)(3)(D) are applicable to the instant case.

## II. *Presentence Report*

Tooker contends that his presentence report contained factually erroneous information concerning his travels. Tooker further asserts that the district court relied upon this allegedly erroneous information in imposing the maximum term of imprisonment.

4. We note that in his brief on appeal, Tooker makes much of the district court's summary denial of his Rule 35 motion. It is well established, however, that the district court may summarily deny such a motion "if the facts alleged fail to show illegality or gross abuse of discre-

Generally, this Court will not review the severity of a sentence imposed within statutory limits. *United States v. Sparrow*, 673 F.2d 862, 864 (5th Cir.1982). This Court will, however, "carefully scrutinize the judicial process by which punishment was imposed." *Id.* A Rule 35 motion is directed to the sound discretion of the district court and will be disturbed only for illegality or gross abuse of discretion. *Id.; see also United States v. Robinson*, 700 F.2d 205, 214 (5th Cir.1983), *cert. denied*, — U.S. —, 104 S.Ct. 1003, 79 L.Ed.2d 235 (1984). Despite the district court's broad discretion, a defendant retains the right not to be sentenced on the basis of invalid premises. *United States v. Espinoza*, 481 F.2d 553, 555 (5th Cir.1973).

A defendant may not obtain relief, however, by merely alleging that his presentence report contained factual inaccuracies or inappropriate information. *United States v. Garcia*, 693 F.2d 412, 415 (5th Cir.1982); *United States v. Cimino*, 659 F.2d 535, 537 (5th Cir.1981). Indeed, a defendant must show that the information was *materially* inaccurate and that the judge *relied* on that information. *Id.*

In the instant case, Tooker points to the district court judge's statements at sentencing in support of his contention that the court relied upon erroneous factual information. The court stated:

I think these were illegally exported because there was no End Use Certificate obtained. Based on the time and travel that the Defendant has done internationally, it is not realistic to me that he was not acquainted with the requirements of international trade. *I have—or there exists nothing but his word that the destination of these implements of war—and that's what they are—was South Africa.* It involves substantial amounts of money.

tion." *United States v. Lewis*, 743 F.2d 1127 at 1129 (5th Cir.1984); *see also United States v. Nerren*, 613 F.2d 572, 573 (5th Cir.1980); *United States v. Muniz*, 571 F.2d 1344, 1345 (5th Cir. 1978).

We know, and I know from prior experience and prior cases involving the criminal exportation of implements of war that these items end up in the hands of people who intend to use them. Otherwise, they're not interested in spending millions of dollars to acquire them. And when we're talking about night vision scopes and bomb fin assemblies, we're not talking about something that we use on September 1st on the opening of dove season. *We're talking about implements that are parts of deadly weapons that can only be used—and particularly in that part of the country—for terror, mayhem, and other undesirable things.*

In my opinion, the turning loose of items like this into the international stream of commerce could very well compromise the security of the United States. And, at the present time, particularly, with the matters that were revealed on Monday night by the President during his address to the nation, *I think that we can sorely stand not to have the security of the United States threatened or compromised.*

Record Vol. 4 at 8–9 (emphasis added). Tooker suggests that the emphasized portions of the court's comments indicate that the court erroneously assumed that the arms were destined for Russia for use in "terror, mayhem, and other undesirable things." We find Tooker's argument untenable. Nothing in the court's statements evinces any reliance by the court on the presentence report's listing of Russia as one of the countries to which Tooker had traveled.[5] Indeed, as defense counsel conceded during oral argument before this Court, the district judge's statements can reasonably be interpreted as an expression of the court's concern that illegally purchased arms could fall into the wrong hands in South Africa or England and be used in terrorist activities.

Tooker also maintains that his presentence report erroneously classified the severity of his offense in Category 8 and that the district court was influenced by that classification in imposing sentence. Tooker has demonstrated, however, neither that the classification by the parole office was a misclassification, nor that the court relied upon the classification in imposing sentence.[6] Clearly, the court made no reference to the classification in giving its reasons for imposing the maximum term of imprisonment.

Tooker also points to the district court's statement concerning an "end use certificate" as evincing the court's reliance on inaccurate information. According to Tooker, an end use certificate had not yet become necessary because the agreement to export the munitions was still being negotiated. An end user's certificate could not be obtained, argues Tooker, until the deal had been consummated. This argument is specious. The issue of whether an end use certificate was the appropriate license for exporting munitions speaks more to the question of Tooker's guilt rather than to the propriety of his sentence. Tooker's guilt is not an issue now before this Court. Indeed, at the proceeding where Tooker entered his plea of guilty, Tooker readily admitted that he did not have the proper license to export munitions. Further, Tooker did not object (although given the opportunity to do so by the court) to the Government's factual summary which recited that an end use certificate was the appropriate license that would permit shipment of the munitions from the United States. The presentence report merely repeated the factual summary which had been put in the record at the plea proceeding.

In sum, Tooker has the burden of demonstrating that his presentence report

---

**5.** The report stated that Tooker had traveled extensively to foreign countries including Israel, Africa, England, Egypt and Russia.

**6.** At oral argument, defense counsel stated that the United States Parole Office has reclassified the severity of Tooker's offense as Category 4.

He also stated that at the time of Tooker's offense, the parole office had no classification for such an offense and that is the reason that the offense was placed in Category 8. Any reclassification by the parole office, however, is not disclosed by the record on this appeal.

contained materially false information upon which the district court relied or that the court abused its discretion. *See Robinson,* 700 F.2d at 214. He has shown neither.[7]

### III. *Rule 32(c)(3)(D)*

■ Fed.R.Crim.P. 32(c)(3)(D),[8] requires the sentencing court, as to each matter controverted, either to make a finding as to the accuracy of the challenged factual proposition or to determine that a finding is unnecessary because the matter controverted will not be considered in sentencing. The rule further requires that a written record of the court's findings accompany any copy later made available to the Bureau of Prisons or the Parole Commission.

The amended rule became effective on August 1, 1983, over four months after Tooker's conviction and sentencing. The Supreme Court's implementation order provides that the amendments "shall govern all criminal proceedings thereafter commenced and, insofar as just and practicable, in proceedings then pending." Amendments to the Federal Rules of Criminal Procedure, Fed.R.Crim.P. 32(c)(3)(D), 103 S.Ct. 81 (advance sheet, yellow pages, June 15, 1983). Tooker argues that the amended rule is applicable to the instant case because his Rule 35(b) motion was pending on the effective date of the amendments and urges us to remand his case to the district court for compliance with the rule. The Government counters that the thrust of Rule 32 pertains to sentencing proceedings, and not to motions under Rule 35. Thus, the argument follows, "pending" refers to cases pending for sentencing, not pending Rule 35 motions.

The Advisory Committee Notes to the proposed Rule 35(c)(3)(D) indicate that the purposes of the amendments are to ensure that a record is made of the resolution of controverted matters and to make certain that the resolution of those controversies comes to the attention of the agencies who utilize the presentence report. With these purposes in mind, and assuming *arguendo* that Tooker's sentencing proceedings were pending on August 1, 1983, we fail to see how it is either just or practicable that the amended rule apply here. Indeed, according to Tooker's counsel at oral argument, the allegedly erroneous factual information in the presentence report was brought to the attention of the probation office and the severity category of Tooker's offense has been reclassified. *See* n. 5 *supra.*

### IV. *Conclusion*

Tooker has alleged no facts to show that the sentence he received was a gross abuse of the district court's discretion. Accordingly, the judgment of the district court denying Tooker's motion for reduction of sentence is

AFFIRMED.

---

**7.** It should also be noted that the sentencing judge possesses wide discretion, largely unlimited in scope, in both the kind and source of information he may consider in determining punishment. *United States v. Ochoa,* 659 F.2d 547, 549 (5th Cir.1981), *cert. denied,* 455 U.S. 959, 102 S.Ct. 1472, 71 L.Ed.2d 678 (1982). Further, the judge is permitted to look beyond the record and consider a defendant's past conduct and activities. *Id.* In this regard, it is highly probable that the district judge in the instant case properly considered, and was influenced by, the fact that Tooker's guilty plea to two counts of unlawfully attempting to export munitions of war was in exchange for the Government's promise not to bring additional charges of customs law violation.

**8.** Fed.R.Crim.P. 32(c)(3)(D) provides:

If the comments of the defendant and his counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to the Bureau of Prisons or the Parole Commission.