**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Gerald ELWOOD, a/k/a Nap, William
Barnes, Jr., and Ernest Marrero,
Defendants–Appellants.**

No. 92–3235.

United States Court of Appeals,
Fifth Circuit.

June 9, 1993.

Herbert V. Larson, Jr., New Orleans, LA, for Gerald Elwood.

James C. Lawrence, New Orleans, LA, for Barnes.

Martin E. Regan, Regan & Assoc., New Orleans, LA, for Ernest Marrero.

Peter Thomson, Herbert W. Mondros, Asst. U.S. Attys., Harry Rosenberg, U.S. Atty., New Orleans, LA, for U.S.

Before POLITZ, Chief Judge, DUHÉ, Circuit Judge, and MAHON *, District Judge.

* District Judge of the Northern District of Texas, sitting by designation.

POLITZ, Chief Judge:

William Barnes, Jr., Gerald Elwood, and Ernest Marrero appeal their convictions for various drug trafficking offenses. We affirm the convictions of Marrero and Barnes and, as detailed herein, remand Elwood's case for *Robinson*[1] findings.

### Background

As part of an ongoing narcotics trafficking investigation, St. John Parish Sheriff's deputies conducted surveillance at the Holiday Inn in LaPlace, Louisiana. On July 12, 1991, Room 102 was among the rooms targeted, based on information that the occupants were staying only one night, paid cash, flashed large rolls of bills, and made lots of long distance phone calls. A deputy observed Ernest Marrero go out to a Nissan Maxima parked near the room, remove a bag, and return to Room 102. Shortly thereafter Marrero, Elwood, Barnes, and Rudolph Dennison[2] left Room 102. Marrero and Dennison, both juveniles, got into the Nissan, with Dennison driving, and placed the bag in the back seat; Elwood and Barnes got into a black, armor-plated, pickup truck with "HOMICIDE" painted on the front and "VILLAIN IN BLACK" on the side.

The Nissan left the hotel followed by the pickup, driven by Elwood. Both immediately ran a stop sign and then a red light. Deputy Francks pulled the Nissan over to the side of the road; the pickup pulled in and stopped behind the deputy and its lights were turned off. Fearing for the safety of Deputy Francks, Deputies Mitchell and Bazile, in a second car, pulled in directly behind the pickup. Both Marrero and Dennison were wearing beepers; neither carried any identification. Francks looked into the Nissan and saw an open bag containing what appeared to be cocaine; the bag was later determined to contain 2,027 grams of cocaine wrapped in over 200 packets.

After determining that neither Elwood nor Barnes had any identification, Deputy Mitchell looked into the truck and saw a Glock semi-automatic pistol; further search re-vealed a .38 caliber Smith & Wesson revolver on the floor beneath the passenger seat, a cellular phone, and a pager. The deputies also found a paper bag containing plastic bags with cocaine residue on them which had fallen out on the passenger side when Barnes exited the pickup. All four were arrested. The deputies testified that Elwood consented to the search of the truck and the subsequent search of the hotel room. In the hotel room the deputies found, *inter alia*, a triple beam scale, more plastic bags, and over $5,000 cash.

Marrero was a juvenile at the time of the offense but the district court granted the government's motion to try him as an adult. Marrero, Barnes, and Elwood were ultimately charged in a three-count indictment: count one charged Elwood and Barnes with conspiracy to possess with intent to distribute cocaine; count two charged Elwood, Barnes, and Marrero with possession with intent to distribute cocaine; and count three charged all three with using and carrying firearms during and in relation to a drug trafficking offense. They were tried and convicted by a jury on all charges.

Elwood was sentenced to concurrent 121–month terms of imprisonment on counts one and two and a consecutive 60–month term on the gun count. Barnes and Marrero were each sentenced to 78 months imprisonment[3] on the drug counts plus a consecutive 60–month sentence on the gun count.

### Analysis

1. *Trial of Ernest Marrero as an Adult*

■ Marrero contends that it was not proper to try him as an adult. The requisites for trying a juvenile as an adult in federal court are set forth in 18 U.S.C. § 5032. In a case such as this, the government first must certify to the court that (1) the offense charged is one of the enumerated drug offenses, and (2) "there is a substantial Federal interest in the case or the offense to warrant the exercise of federal jurisdiction."[4]

---

1. *United States v. Robinson,* 700 F.2d 205 (5th Cir.1983).

2. Dennison was prosecuted as a juvenile; he was not tried with the others.

3. Barnes received concurrent 78–month sentences on counts one and two.

4. 18 U.S.C. § 5032.

The district court then must conduct a transfer hearing to determine whether trial of the juvenile as an adult "would be in the interest of justice." The district court must consider and make record findings regarding the following factors:

> The age and social background of the juvenile; the nature of the alleged offense; the extent and nature of the juvenile's prior delinquency record; the juvenile's present intellectual development and psychological maturity; the nature of past treatment efforts and the juvenile's response to such efforts; the availability of programs designed to treat the juvenile's behavioral problems.[5]

"The decision whether to transfer a juvenile to trial as an adult under 18 U.S.C. § 5032 is within the sound discretion of the trial court, provided the court employs and makes findings as to the six criteria outlined in the Code."[6]

The district court made the requisite findings and determined that Marrero should be tried as an adult. After discussing each of the six factors in detail, the district court concluded:

> The court finds factors I and VI listed are neutral in the decision to transfer to adult jurisdiction. However, factors II, III, IV and V weigh heavily in favor of such transfer. The court is impressed with the fact that the instant offense involves not just a small "street sale" quantity of cocaine. The offense involves possession of a substantial amount of cocaine unlikely to be encountered in a first time exposure to the business. Past efforts to rehabilitate this juvenile have not been successful. This juvenile, while possessing an aggressive personality, is apparently without any meaningful supervision or direction. Treatment as an adult is in the interest of

justice and will finally add some sorely needed structure in the juvenile's life.

Marrero points to no specific errors in the district court's factual findings or conclusions. Review of the record confirms that the district court's factual findings are supported by the evidence and we find no error in the application of the law.

### 2. Sufficiency of the Evidence

Marrero and Barnes contend that there was insufficient evidence to support their convictions. When reviewing for sufficiency of the evidence we must uphold a verdict if, upon viewing the evidence in the light most favorable to the verdict, a rational trier of fact could conclude that the essential elements of the crime were established beyond a reasonable doubt.[7]

### Possession with Intent— Marrero and Barnes

■ To convict Marrero and Barnes for possession with intent to distribute cocaine, the government was required to prove that they (1) possessed illegal drugs, (2) knowingly, and (3) with intent to distribute.[8] Possession may be actual or constructive;[9] constructive possession is "the knowing exercise of, or knowing power or right to exercise, dominion and control over" the contraband.[10]

■ Barnes contends that there was no evidence demonstrating that he was aware of the drugs found in the Nissan. Marrero contends that there is no evidence he knew of a scheme to distribute narcotics and that his presence in the car where the drugs were found is insufficient to support the conviction. At oral argument, Marrero's counsel asserted that the officers misidentified Marrero and that it was Dennison they saw carry the drugs. The officers testified that they saw Marrero, wearing a black track suit, retrieve

---

5. *Id.*

6. *United States v. Doe*, 871 F.2d 1248, 1255 (5th Cir.), *cert. denied*, 493 U.S. 917, 110 S.Ct. 276, 107 L.Ed.2d 257 (1989).

7. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

8. *United States v. Pigrum*, 922 F.2d 249 (5th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 2064,

114 L.Ed.2d 468 (1991); *United States v. Vasquez*, 953 F.2d 176 (5th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 2288, 119 L.Ed.2d 212 (1992).

9. *Pigrum.*

10. *United States v. Gardea Carrasco*, 830 F.2d 41, 45 (5th Cir.1987) (citations omitted).

a bag out of the Nissan and bring it into the hotel room. The evidence demonstrated that when he was checked into the juvenile facility in Orleans Parish after he was arrested, Marrero was wearing jean shorts and a polo shirt; Dennison, however, was wearing a black track suit. At trial, Marrero testified that he retrieved a tan bag out of the Nissan and brought it into the hotel room. He then testified that Dennison removed the drug-filled bag from that tan bag and carried it out to the car. We perceive no factual dispute regarding whether Marrero was the one who retrieved a bag from the car—he admitted such.

Viewed in the light most favorable to the verdict, the following evidence was presented to support the convictions. Marrero brought a bag from the Nissan into the hotel room; when carried out a short time later the bag contained over two kilograms of cocaine.[11] Marrero, Barnes, Elwood, and Dennison were all in the hotel room when the bag was brought in and they all left the hotel room, with the drugs, at the same time. Marrero and Dennison were both wearing beepers which are commonly used in the drug trade. A triple beam scale and plastic bags similar to those in which the cocaine was packaged were later found in the hotel room, suggesting that the packaging was done there. Barnes and Elwood, each carrying a firearm, followed the Nissan and the drugs from the hotel in an armor-plated truck; from this the jury could infer that they were providing protection for the drugs. This inference is also supported by the fact that the pickup stopped when Officer Francks stopped the Nissan. Finally, when Barnes got out of the truck, a bag fell out containing wrappings with cocaine residue and numerous plastic bags cut in a fashion similar to the bags of cocaine found in the Nissan. The evidence suggests far more than mere presence on the part of Barnes and Marrero.

*Conspiracy to Possess with Intent—Barnes*

■ To convict Barnes for conspiracy to possess with intent to distribute cocaine under 21 U.S.C. § 846, the government must prove (1) an agreement existed between two or more persons to violate narcotics laws; (2) the defendant knew of the conspiracy and intended to join it; and (3) the defendant voluntarily participated in the conspiracy.[12] Barnes contends that there was no proof that he agreed or intended to participate in a conspiracy. Instead, he contends that the government's case is based only upon his friendship with the codefendants and his knowing presence.

■ The government agrees that mere presence is not enough, but notes that it is a "significant factor to be considered within the context of the circumstances under which it occurs."[13] Any element of the conspiracy charge may be proven with circumstantial evidence, and "a common purpose and plan may be inferred from the development of 'a collocation of circumstances.'"[14] The circumstances surrounding his presence adequately support Barnes' conspiracy conviction. For example, the fact that Barnes was armed while following the Nissan suggests that he had agreed to help protect the drugs. "One may be guilty as a coconspirator even if he or she only plays a minor role;"[15] the evidence established that Barnes played at least such a role.

*Possession/Use of Firearm—
Marrero and Barnes*

To support convictions under 18 U.S.C. § 924(c), the government must prove that the defendant (1) used or carried a firearm,

11. The jury properly could infer intent to distribute from the large quantity of cocaine, *see United States v. Prieto–Tejas,* 779 F.2d 1098 (5th Cir. 1986), and the fact that it was divided into over 200 small packets.

12. *United States v. Guerra–Marez,* 928 F.2d 665 (5th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 322, 116 L.Ed.2d 263 (1991).

13. *United States v. Evans,* 941 F.2d 267, 272 (5th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 451,

116 L.Ed.2d 468 (1991) (*quoting United States v. Medina,* 887 F.2d 528, 533 (5th Cir.1989)).

14. *Guerra–Marez,* 928 F.2d at 674 (*quoting United States v. Marx,* 635 F.2d 436, 439 (5th Cir. 1981), further citations omitted).

15. *United States v. Greenwood,* 974 F.2d 1449, 1457 (5th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2354, 124 L.Ed.2d 262 (1993).

(2) during or in relation to a drug trafficking crime.[16]

Barnes relies upon his previous arguments regarding the insufficiency on the possession and conspiracy counts. He admits carrying a firearm, but contends that the government failed to demonstrate that it was connected to drug trafficking activity. Because we find that there was sufficient evidence to support his conviction on the drug possession and conspiracy counts, we find sufficient evidence that possession of the gun was related to the drug trafficking activity.

█ Marrero contends that the government failed to link him to the firearms in the truck. He contends that he had no control over or access to the firearms.[17] Marrero's argument founders, however, because the jury was given a *Pinkerton*[18] instruction in connection with the section 924(c) charge. Thus, Marrero, as an unindicted coconspirator, could be held liable for the substantive offenses of the other coconspirators under an agency theory.[19] "A party to a continuing conspiracy may be responsible for a substantive offense committed by a coconspirator pursuant to and in furtherance of the conspiracy, even though that party does not participate in the substantive offense or have any knowledge of it."[20] The evidence supports the conclusion that Marrero was a coconspirator and that, given the substantial quantity of drugs involved, it was foreseeable that Barnes and Elwood would carry firearms in furtherance of the conspiracy.

### 3. The Motion to Suppress

Barnes and Elwood contend that the district court erred in denying their motion to suppress the cocaine found during the stop of the Nissan, the guns found in the truck, and the additional evidence found during the search of the hotel room. When reviewing a ruling on a motion to suppress based on evidence presented at a suppression hearing, "the trial court's purely factual findings must be accepted unless clearly erroneous, or influenced by an incorrect view of the law, and the evidence must be viewed in the light most favorable to the party prevailing below."[21] We review determinations of law *de novo*.

An individual alleging a fourth amendment violation must demonstrate "a legitimate expectation of privacy in the invaded place."[22] We have identified several factors to consider regarding whether an individual has a legitimate expectation of privacy:

> Whether the defendant has a possessory interest in the thing seized or the place searched, whether he has the right to exclude others from that place, whether he has exhibited a subjective expectation that it would remain free from governmental invasion, whether he took normal precautions to maintain his privacy and whether he was legitimately on the premises.[23]

█ A non-owning passenger of a vehicle has no standing to challenge the search of the vehicle.[24] Thus, neither Barnes nor Elwood had a legitimate expectation of privacy in the Nissan[25] and Barnes had no legitimate

**16.** *Pigrum.*

**17.** *United States v. Joseph,* 892 F.2d 118 (D.C.Cir. 1989) (defendant was convicted under section 924 for the weapon found on his companion, but court found that the defendant exercised dominion and control over the weapon and had ready access to it).

**18.** *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946).

**19.** *United States v. Raborn,* 872 F.2d 589 (5th Cir.1989).

**20.** *Raborn,* 872 F.2d at 596.

**21.** *United States v. Coleman,* 969 F.2d 126, 129 (5th Cir.1992).

**22.** *Rakas v. Illinois,* 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978); *United States v. Antone,* 753 F.2d 1301 (5th Cir.), *cert. denied,* 474

U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985). This used to be termed a standing requirement; in Rakas the Court held that the standing inquiry is essentially subsumed in the substantive consideration of the individual's legitimate expectations of privacy in the place searched. We have continued, however, to use "standing" as a shorthand description of this inquiry.

**23.** *United States v. Haydel,* 649 F.2d 1152, 1155 (5th Cir.1981), *cert. denied,* 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 140 (1982).

**24.** *United States v. Mendoza–Burciaga,* 981 F.2d 192 (5th Cir.1992); *United States v. Cardona,* 955 F.2d 976 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 381, 121 L.Ed.2d 291 (1992).

**25.** Even assuming that they have standing to challenge the search of the Nissan, the appellants' arguments are without merit. They con-

expectation of privacy in the pickup truck. Although the district court did not address standing in ruling on the motion to suppress, there was no evidence from which the defendants' standing regarding these searches could be inferred.[26] Elwood, however, has standing to contest the searches of both the truck and the hotel room.[27]

 The district court found that Elwood's gun was in plain view in the pickup; there was no improper search. An essential predicate to seizure of evidence found in plain view is "that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed."[28] The incriminating character of the item seized must be immediately apparent, but the discovery need not be inadvertent. The officers had reason to fear for their safety when the pickup, without being stopped, pulled in behind Deputy Francks and its lights were turned off. After determining that neither Elwood nor Barnes had any identification, the officers were justified in looking into the truck to obtain the vehi-

cle's registration.[29] When the loaded Glock was found on the front seat, the officers were justified in expanding their search.

After the traffic stop was completed, the officers returned to the hotel and searched Room 102. The district court found that Elwood consented to the search of the hotel room. Elwood contends that his consent, if given, was tainted as the fruit of a prior invalid arrest.[30] We conclude that Elwood's arrest was valid. As noted above, Elwood, without being pulled over by the police, pulled off the road behind Deputy Francks, alerting the other deputies. The Glock was found in plain view in his vehicle, and the subsequent search of the truck was valid. Thus, Elwood's contention that his consent to the search of the hotel room was tainted by an illegal arrest founders.

### 4. Admission of 404(b) Evidence Against Elwood

 When the government, prior to trial, indicated its intent to use against Elwood 404(b)[31] evidence of several weapons, a bul-

tend that the stop was improper because it was based upon pretext—that the deputies, having no probable cause to stop the vehicles, followed them from the hotel hoping to find a reason to pull them over; within about 30 seconds from leaving the hotel the deputies found such a reason and pulled over the Nissan for running a red light. The majority of this court, *en banc*, has held that underlying motives of police in making a stop are not subject to inquiry "so long as police do no more than they are objectively authorized and legally permitted to do." *United States v. Causey*, 834 F.2d 1179, 1184 (5th Cir. 1987) (*en banc*). Thus, the pretext challenge is foreclosed.

26. *See Cardona.* The appellants contend that the government has waived the standing issue. In *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), the Court noted that the government may lose its right to raise the standing issue "when it has made contrary assertions in the courts below, when it has acquiesced in contrary findings by those courts, or when it has failed to raise such questions in a timely fashion during the litigation." 451 U.S. at 209, 101 S.Ct. at 1646. We find that the government did not waive the issue because it was raised in its response to Elwood's motion, and raised with respect to Barnes at the suppression hearing.

27. Although an overnight guest at a residence may have some legitimate expectation of privacy in the residence (*see Minnesota v. Olson*, 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990)), Barnes failed to demonstrate any privacy expec-

tation in Room 102 at the Holiday Inn; in fact, he merely joined in Elwood's motion to suppress and presented no evidence at the suppression hearing. *See Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980) (to establish a fourth amendment violation the defendant must show a legitimate expectation of privacy in the place searched).

28. *Horton v. California*, 496 U.S. 128, 136, 110 S.Ct. 2301, 2308, 110 L.Ed.2d 112 (1990).

29. At trial, Elwood testified that after exiting the vehicle, he told the deputy that the Glock was in the truck.

30. *See Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).

31. Rule 404(b) of the Federal Rules of Evidence provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial ... of the general nature of any such evidence it intends to introduce at trial.

let-proof vest, a glass tube and a spoon coated with cocaine residue, and some plastic bags seized from his home the prior year, he filed a motion *in limine* seeking the exclusion of the evidence and asking the court to make record findings regarding the probative value/prejudicial effect of the proposed evidence as specifically called for in *United States v. Robinson.*[32]

The long-standing procedure in this circuit for admitting 404(b) evidence was prescribed by the *en banc* court:

First, it must be determined that the extrinsic evidence is relevant to an issue other than the defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet other requirements of Rule 403.[33]

*Robinson* requires that upon the request of a party, the district court determining the admissibility of 404(b) evidence must make an on-the-record articulation of its *Beechum* probative value/prejudice inquiry. "In the absence of on-the-record findings in response to such a request, we will be obliged to remand unless the factors upon which the probative value/prejudice evaluation were made are readily apparent from the record, and there is no substantial uncertainty about the correctness of the ruling."[34]

At the scheduled hearing on the motion *in limine,* the government presented no witnesses and requested that the matter be submitted on briefs and ruled on at trial. At trial, a bench conference was conducted off the record to discuss the "mechanics of getting to 404(b) evidence." The district court, without making any *Beechum/Robinson* findings, admitted the evidence noting: "Objections have been made before." The judge gave a limiting instruction that the evidence should be considered only with regard to Elwood's intent to commit the charged crimes. The government contends that Elwood waived his objection to the failure to make record findings because he failed to renew his objection when the district court admitted the evidence at trial.

We recognized in *United States v. Anderson,*[35] that remand may be necessary even in the absence of a Robinson request in those close cases in which nothing in the record reflects that the court applied the *Beechum* test. This is such a case. The factors upon which the court's determination of admissibility was made are not apparent from the record, mandating a remand for the district court to explain its reasons on the record.

The government suggests that this is not a close case. We disagree. Given that his counsel admitted during opening statements that Elwood possessed a firearm, the only question was Elwood's intent to participate in the cocaine distribution conspiracy. According to the government, the probative value of the 404(b) evidence is that the prior bad act was the possessing of weapons *and* drug paraphernalia, acts reflective of his intent to participate in the instant charged drug conspiracy and to use firearms as part of that activity. While the 404(b) evidence appears to have limited relevance on this issue, there is the high probability of prejudice from parading in front of the jury what the prosecutor repeatedly characterized as a 'virtual arsenal'[36]—particularly when the instant offense involved the possession of a single gun each by Elwood and Barnes.

We must remand with instructions that the district court apply the *Beechum* teachings to the Rule 404(b) evidence introduced against Elwood. We repeat our directions in *Anderson:*

If the court holds that the evidence meets the first *Beechum* step as to relevancy, it then must decide whether the evidence's

---

**32.** 700 F.2d 205 (5th Cir.1983).

**33.** *United States v. Beechum,* 582 F.2d 898, 911 (5th Cir.1978) (*en banc*), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979).

**34.** *Robinson,* 700 F.2d at 213.

**35.** 933 F.2d 1261 (5th Cir.1991).

**36.** In closing argument, the prosecutor commented:

We'll get all the other guns here. The man had a virtual arsenal of weapons. A virtual arsenal. A virtual arsenal was seized from his house near cocaine distribution equipment and cocaine. Is this a person worried about safety? No. This is a man, this is a drug dealer. He is a king pin, a drug dealer. He is a major distributor.

probative value was substantially outweighed by its prejudicial effect. If the court determines that the probative value was substantially outweighed, then the court must decide whether there is a reasonable possibility that the evidence affected the outcome of the case. In making this determination, the court should consider the effect of the jury instruction and the government's closing argument. If the court finds that the evidence improperly affected the outcome of the case, the court must order a new trial. If the court finds that the evidence did not improperly affect the outcome of the case, "[t]he trial judge shall certify to us his findings and conclusions. The record shall be supplemented by the on-the-record determination herein prescribed, and by any materials submitted by the parties to the district court. Following such filing, the clerk will set a schedule for supplementary briefing and the matter will be returned to this panel for disposition." [37]

We defer ruling on Elwood's remaining claim on appeal regarding his sentence.

For the foregoing reasons, we AFFIRM the convictions of Ernest Marrero and William Barnes and, retaining jurisdiction, we REMAND IN PART WITH INSTRUCTIONS relative to the claims of Gerald Elwood.

---

**37.** 933 F.2d at 1277 (*quoting Robinson,* 700 F.2d at 214 n. 12).