IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 92-8597
_____


NATIONAL TREASURY EMPLOYEES UNION
and CARRIE L. BRAVO,

                                        Plaintiffs-Appellees,

                        versus

U.S. DEPARTMENT OF THE TREASURY,
U.S. INTERNAL REVENUE SERVICE and
U.S. OFFICE OF PERSONNEL MANAGEMENT,

                                        Defendants-Appellants.

_____

        Appeal from the United States District Court for the
                    Western District of Texas
_____
                        (June 22, 1994)

Before SNEED,[*] REYNALDO G. GARZA, and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

        The National Treasury Employees Union ("NTEU") and Carrie L.
Bravo brought this action challenging an IRS employee questionnaire
concerning personal use of drugs and alcohol as violating the Fifth
Amendment protection against self-incrimination and the
constitutional right to privacy.  We hold that the plaintiffs do

_____

        [*]Circuit Judge of the Ninth Circuit, sitting by designation.

not have standing to assert either their Fifth Amendment claim or their right to privacy claim.

I

The plaintiffs in this case are the NTEU and Carrie L. Bravo. The NTEU is a federal sector labor union that represents over 100,000 employees of the Internal Revenue Service ("IRS"), and NTEU Chapter 247 brought this action as the representative of certain IRS employees in Austin, Texas. Carrie L. Bravo is a tax examining assistant at the IRS Austin Compliance Center. The plaintiffs complain that the U.S. Department of Treasury ("Treasury") and the IRS have taken actions to force certain employees who work for the IRS to respond to a comprehensive government-wide questionnaire known as the SF-85P. The plaintiffs claim that the questionnaire violates the employees' Fifth Amendment protection against self-incrimination and the employees' constitutional privacy right.

Defendant Office of Personnel Management ("OPM") has established criteria and procedures for determining the "suitability" of employees in the federal civil service. It has determined that certain positions have moderate or high potential for adverse impact to the efficiency of the service, and it has denominated those positions as "public trust" positions. Incumbents and applicants for employment in such positions are required to complete a comprehensive government-wide questionnaire known as the SF-85P. The questionnaire is used in background

investigations and periodic reinvestigations of employees to determine their fitness for selection or retention in their jobs.

Various positions in IRS district offices, customer service centers and compliance centers have been designated "public trust" positions. Representative positions include taxpayer service specialist, tax auditor, tax examiner, tax examining assistant, office automation coordinator, interpreter, data transcriber, teller, secretary typist, secretary stenographer, and computer programmer.

Before the district court entered a permanent injunction, defendants IRS and OPM were requiring current employees in these positions to answer the following questions on the SF-85P:

> 19a. In the last 5 years, have you used, possessed, supplied, or manufactured any illegal drugs? When used without a prescription, illegal drugs include marijuana, cocaine, hashish, narcotics (opium, morphine, codeine, heroin, etc.), depressants (barbiturates, methaqualone, tranquilizers, etc.), hallucinogenics (LSD, PCP, etc.). (NOTE: The information you provide in response to this question will not be provided for use in any criminal proceedings against you, unless requested by the Department of Justice in connection with an independent investigation).

> b. Have you experienced problems (disciplinary actions, evictions, formal complaints, etc.) on or off a job from your use of illegal drugs or alcohol? (NOTE: Answer this question only if instructed to do so by the Agency.)

An affirmative answer to either question obliges the employee to reveal the dates on which illegal substances were used, the types of substances used, "the nature of the activity," "any other details relating to" the activity, and "any treatment or counseling received."

It is clear that affected employees are "required" to respond to the questions. Pursuant to regulation, failure to answer either question subjects employees to adverse action, up to and including removal from their positions. 5 C.F.R. § 731.303. It is further undisputed that the government has not given employees criminal use immunity for potentially incriminating responses to Question 19.

II

On October 10, 1989, the NTEU filed this lawsuit alleging that the IRS's use of the questionnaire 1) violated its members' Fifth Amendment privilege against self-incrimination and 2) violated its members' constitutional right to privacy. The individual plaintiff, Carrie Bravo, was added by amended complaint. Plaintiffs alleged that forcing IRS employees to reveal illegal drug activity, "under pain of losing their jobs" and "without giving them recorded guarantees of criminal use immunity" violates their Fifth Amendment right against self-incrimination.

The NTEU and Bravo also alleged that requiring employees to disclose alcohol or drug problems experienced off the job violates the employees' constitutional right to privacy by inquiring into intimate, personal matters in an overly broad manner and without substantial justification.

The district court, ruling on cross-motions for summary judgment, granted judgment for the NTEU and Bravo on August 31, 1992. The court first concluded that the union had standing to assert its claims that the government had violated its members'

-4-

privilege against self-incrimination and right to privacy.  With respect to the Fifth Amendment claim, the court reasoned that where a public employer seeks information from an employee that might be incriminating, the employee cannot be required to answer unless the questions are "specifically, directly and narrowly" related to the employee's performance of official duties.  It observed that the IRS employees who were questioned about illegal activity--"public trust" employees--were charged only with performing such functions as dealing with the public, investigating records, and filing.  It therefore concluded that questions pertaining to off-duty drug use or problems were not sufficiently related to these duties to warrant the government's asking for potentially incriminating information.

The court also held that questions concerning off-duty problems with drugs or alcohol violated the plaintiffs' constitutional right to privacy.  It reasoned that any such problems relate to intimate and highly personal information, and that the Constitution generally protects individuals from having to disclose personal matters.  The court concluded that the government had not shown a connection between off-duty substance abuse and suitability for IRS public trust employment, and that the government's asserted interest in keeping drug users out of the federal work force did not give rise to a legitimate interest sufficient to outweigh the employees' privacy interest.

The court accordingly entered judgment enjoining further questioning of employees with regard to illegal drug activity or substance abuse and barring the government from making any use of answers already supplied by such inquiries. The government appeals.

## III

The government argues on appeal, first, that the plaintiffs lack standing to assert the Fifth Amendment privilege. Second, the government argues that the district court further erred in granting standing to the plaintiffs to assert the constitutional right to privacy on behalf of the affected IRS employees, and in holding that the IRS questionnaire violates the employees' right to privacy.

## A

Determining whether the plaintiffs have standing requires that we consider both constitutional limitations on federal court jurisdiction and prudential limitations on its exercise. The requirement of standing is designed to confine the federal courts to their proper--and properly limited--role in a democratic society. See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472, 102 S.Ct. 752, 758 (1982); Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205 (1975).

"In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a `case or

-6-

controversy' between himself and the defendant within the meaning of Art. III.  This is the threshold question in every federal case, determining the power of the court to entertain the suit."  Warth, 422 U.S. at 498, 95 S.Ct. at 2205.  "[A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to `show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant.'"  Valley Forge, 454 U.S. at 472, 102 S.Ct. at 758.

As previously noted, NTEU Chapter 247 brought this action as the representative of certain of its members who are IRS "public trust" employees in Austin, Texas, and who would be required to answer the government's questionnaire absent the district court's injunction.  As the matter relates to standing, an association may have standing solely as the representative of its members, even in absence of injury to itself.  Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 342, 97 S.Ct. 2434, 2441 (1977); Warth, at 511, 95 S.Ct. at 2211; National Motor Freight Traffic Association v. United States, 372 U.S. 246, 83 S.Ct. 688 (1963).  "The possibility of such representational standing, however, does not eliminate or attenuate the constitutional requirement of a case or controversy.  The association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit."  Warth 422 U.S. at 511, 95 S.Ct. at 2211-12 (citing Sierra Club v. Morton,

405 U.S. 727, 734-41, 92 S.Ct. 1361, 1365-69 (1972)). In addition, there are two other requirements for associational standing. As stated by Hunt, the test for representational standing requires that:

> (1)  the members of the association would have standing individually;
>
> (2)  the interests pursued through the litigation are germane to the association's purpose; and
>
> (3)  neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

Hunt, 432 U.S. at 343, 97 S.Ct. at 2441.

B

First, we must apply these standing principles to the plaintiffs' Fifth Amendment claim. We hold that because it failed to satisfy the first prong of the Hunt test to show that its members, or any one of them, would have standing individually, the NTEU lacks standing to assert the Fifth Amendment claim. Similarly, we hold that the individual plaintiff, Carrie L. Bravo, has also failed to show that she has standing to assert her claim.

As outlined above, the critical standing question is whether the plaintiff has demonstrated a personal, distinct, and palpable injury-in-fact that is fairly traceable to the defendant's allegedly unlawful conduct, and that such and injury is likely to be redressed by a favorable judicial decision. Metropolitan Wash. Airports Auth. v. Citizens for Abatement of Aircraft Noise, Inc., 501 U.S. 252, 111 S.Ct. 2298, 2306 (1991); Valley Forge, 454 U.S.

-8-

at 472, 102 S.Ct. at 758 (1982); <u>Allen v. Wright</u>, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324 (1984). "Although standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal, it often turns on the nature and source of the claim asserted." <u>Warth</u>, 422 U.S. at 500, 95 S.Ct. at 2206 (citation omitted).

Decisions allowing standing in Fifth Amendment cases will fall generally into two categories: First, where a plaintiff remains silent, asserts the Fifth Amendment privilege against self-incrimination, and is then subjected to some sanction or penalty for refusing to testify, he clearly can assert a Fifth Amendment claim. <u>Gardner v. Broderick</u>, 392 U.S. 273, 88 S.Ct. 1913 (1968); <u>Uniformed Sanitation Men Association, Inc. v. Commissioner of Sanitation of New York</u>, 392 U.S. 280 (1968). Second, where a plaintiff has <u>refrained</u> from invoking the privilege, given an incriminating statement, and then seeks to bar the use of the statement in a later criminal proceeding--either on the ground that the statement was coerced, or on the related ground that the witness's ostensible waiver of the privilege against self-incrimination was not knowing and voluntary, a justiciable claim will surely exist. <u>Lefkowitz v. Cunningham</u>, 431 U.S. 801, 805, 97 S.Ct. 2132, 2135 (1977); <u>Garrity v. New Jersey</u>, 385 U.S. 493, 87 S.Ct. 616 (1967).

In the present case, however, the plaintiffs do not allege that any represented member of the NTEU has actually suffered any

-9-

such injury as a result of the "suitability" questionnaire.  There is no allegation that an employee has been penalized for failing to waive the privilege; indeed, there is no allegation that any employee has even asserted the privilege as a basis for declining to answer the suitability questionnaire; nor is there any allegation that an employee has provided an incriminating response, which the government has attempted to use against him in a criminal proceeding.  Consequently, the plaintiffs have failed to assert an injury.

What is particularly troublesome to their assertion of standing, however, is that the plaintiffs also have not even alleged that there is a threat of such an injury to any individual member of the association; or stated another way, the plaintiffs have identified no "Jane Doe" member of the NTEU who, if required to fill out question 19 on SF-85-P, would tend to incriminate herself by giving truthful answers.  In order to have standing, "[t]he [NTEU] must show [an individual who] `has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct, and the injury or threat of injury must be both `real and immediate,' not `conjectural' or `hypothetical.'"  City of Los Angeles v. Lyons, 461 U.S. 95, 101-02, 103 S.Ct. 1660, 1665 (1983).  Because the NTEU has failed to identify even one individual who would be forced to incriminate himself by truthfully responding to the drug-related questions, it is clear to us that the injury alleged is--as far as this suit is

concerned--only hypothetical and conjectural.  Thus, neither the

NTEU nor Carrie Bravo has Art. III standing to assert a Fifth

Amendment claim, and, accordingly, we vacate the judgment of the

district court in this respect.

C

We next turn to the plaintiffs' right to privacy claim and,

once again, address the issue of standing.  As previously noted, we

must consider the question of standing in the light of "the nature

and source of the claim asserted."  See Warth, 422 U.S. at 500, 95

S.Ct. at 2206.  We hold that because the NTEU has failed to show

that its individual members have standing to assert the right to

privacy claim, it has once again failed the first prong of the Hunt

test.

Although the constitutional right to privacy remains largely

undefined, there are at least two clear strands of privacy

interests that have been addressed by the courts.  Whalen v. Roe,

429 U.S 589, 598-99, 97 S.Ct. 869, 876 (1977).  The particular

right asserted here is the "individual interest in avoiding

disclosure of personal matters," id., which is properly called the

right to confidentiality.  Plante v. Gonzalez, 575 F.2d 1119, 1132

(5th Cir. 1978).[1]  In addressing the merits of an individual's

right to confidentiality claim, a court must weigh the government's

_____

[1]The other privacy interest protected by the law is the
interest in independence in making certain kinds of important
personal decisions.  See Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705
(1973).

-11-

interest in disclosure against the individual's privacy interest. Woodland v. City of Houston, 940 F.2d 134, 138 (5th Cir. 1991); Fraternal Order of Police, Lodge 5 v. City of Phila., 812 F.2d 105, 110 (3d Cir. 1987); see Plante, 575 F.2d at 1134.[2]

Initially, therefore, we must identify what interests of privacy the plaintiffs have in the present case. More specifically, the question we must ask is whether, and to what extent, the IRS questionnaire seeks information in which the employees may have a reasonable expectation of privacy.[3] See Fraternal Order of Police, 812 F.2d at 112; see also, Plante, 575 F.2d at 1135 (discussing the privacy that senators "may reasonably expect"). A plaintiff who has no reasonable expectation of privacy does not have standing to sue in federal court. See United States

---

[2]In conducting this balance, the Fifth Circuit applies what has been aptly described as an intermediate standard of review rather than a strict-scrutiny analysis. See Woodland, 940 F.2d at 138; DuPlantier v. United States, 606 F.2d 654 (5th Cir. 1979); Plante, 575 F.2d at 1134; see also Barry v. City of New York, 712 F.2d 1554, 1559 (2d Cir.), cert. denied, 464 U.S. 1017, 104 S.Ct. 548 (1983).

[3]The constitutional right of privacy at issue in the present case (discussed in Whalen, 429 U.S at 598-99, 97 S.Ct. at 876), like the right of privacy protected directly by the Fourth Amendment, is defined by (and extends only to) a person's "reasonable expectations." See Rakas v. Illinois, 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978) (citing Katz v. United States, 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576 (1976)).

v. Elwood, 993 F.2d 1146, 1151 (5th Cir. 1993); United States v. Pofahl, 990 F.2d 1456, 1478 n.23 (5th Cir. 1993).[4]

We begin this inquiry by noting that whether a public employee's expectation of privacy with regard to a certain zone of personal information is reasonable depends, in part, upon society's established values and its expectations of its public servants, as reflected in our representative government.  See, e.g., Fraternal Order of Police, 812 F.2d at 113 (expectation of privacy with respect to medical information is reasonable because various rules and statutes recognize its confidential character); see also Trop v. Dulles, 356 U.S. 86, 101, 78 S.Ct. 590 (1958) (discussing the "evolving standards of decency" reflected in constitutional rights).  Today's society has made the bold and unequivocal statement that illegal substance abuse will not be tolerated.[5]  The

---

[4]The reasoning of these Fourth Amendment cases regarding standing is admittedly circular.  See Lucas v. South Carolina Coastal Council, ___ U.S. ___, ___, 112 S.Ct. 2886, 2903, 120 L.Ed.2d 798 (1992) (Kennedy, J., concurring).  The constitutionally protected right can be asserted only by those who have "reasonable expectations," but the question of what is reasonable is a substantive question that must be addressed by the courts.  Accordingly, the Supreme Court in Rakas noted that the standing inquiry is essentially subsumed in the substantive consideration.  "We have continued, however, to use `standing' as a shorthand description of this inquiry."  Elwood, 993 F.2d at 1151 n.22 (citing Rakas, 439 U.S. at 143, 99 S.Ct. at 430, 58 L.Ed.2d 387).

[5]In the National Drug Interdiction Improvement Act of 1986, Pub. L. No. 99-570, § 3002, 100 Stat. 3207, the Congress found that a "balanced, coordinated, multifaceted strategy for combating the growing drug . . . problem in the United States is essential." Furthermore, the last two executive administrations have appointed a "drug czar" to lead the war against drugs.  See also 134 Cong. Rec. S15,964 (statement of Sen. Gramm) ("`We are not going to

government declared an all-out war on illegal drugs more than a decade ago. Since that time, the government has spent billions of dollars in an attempt to mitigate, if not eliminate, what has been publicly declared one of the primary evils of our contemporary society. Surely anyone who works for the government has a diminished expectation that his drug and alcohol abuse history can be kept secret, given that he works for the very government that has declared war on substance abuse.

The extent to which an individual's expectation of privacy in the employment context is reasonable depends, in a significant part, upon the employee's position and duties.[6] As previously noted, the OPM has established criteria and procedures for determining the "suitability" of employees in the federal civil service. More specifically, the OPM mandated that each position

---

tolerate that use. If you are addicted, you need to get help. We want to help you and we want to get you off drugs. But if you are not addicted, if you are simply using drugs because you choose to do it, we want you to know that you are going to pay for it.'"); 134 Cong. Rec. S15,986 (statement of sen. Karnes) ("[D]rug use in the workplace costs at least $100 billion annually in lost productivity from on-the-job accidents, illnesses and absenteeism.")

[6]See NTEU v. Von Raab, 489 U.S. 656, 109 S.Ct. 1384, 1394 (1989) ("Customs employees who are directly involved in the interdiction of illegal drugs or who are required to carry firearms in the line of duty . . . have a diminished expectation of privacy in respect to the intrusions occasioned by a urine test."); Fraternal Order of Police, (stating that expectation of privacy with respect to medical and financial information is reduced because employees had previously been required to disclose similar information), Plante, 575 F.2d at 1135 (discussing the privacy expectations of state senators).

within the competitive service is to be designated as "either High, Moderate, or Low risk level as determined by the position's potential for adverse impact to the efficiency of the service." 5 C.F.R. § 731.302(a) (1992) Those positions denominated as High or Moderate risk are deemed "public trust" positions.

In the present case, the members of the NTEU represented in this action are all "public trust employees" at the IRS, because they each have access to the vast stores of financial and other personal and confidential information contained in the tax records of individual taxpayers. These positions, pursuant to OPM classification, have been determined to involve employment circumstances in which misconduct or misfeasance would prove costly to the public's confidence in its civil service.[7] Consequently, any employee who occupies a position of public trust is aware of his employer's elevated expectations in his integrity and performance. He is thus charged with a diminished expectation of privacy concerning his past personal history that is relevant to this elevated expectation, including his alcohol and illegal drug abuse history. In short, public trust employees know that they have diminished rights to withhold personal information that compromises the right of the public to repose trust and confidence in them.

---

[7]No one questions the IRS's classification of these employees as public trust employees. For that matter, we would not lightly overturn the agency's judgment in this respect.

Finally, it is important to note, in determining generally the perimeters of privacy, that the IRS's questionnaire requires these public trust employees only to disclose information to the IRS, as their employer--not to anyone else, and certainly not to the public.  See Whalen, 429 U.S. at 600-02, 97 S.Ct. at 877; Plante, 575 F.2d at 1133; United States v. Westinghouse Electric Corp., 638 F.2d 570, 578-80 (3d Cir. 1980) (one factor to consider is subsequent public disclosure).  In other words, the IRS's questionnaire makes only a minimal intrusion on the "privacy" of its employees, designed to satisfy its need for access.

Given the importance that the public and its representative government attach to a drug-free society, given that the employees represented in this action are all "public trust" employees at the IRS, and given that the information collected by the questionnaire will not be publicly disclosed, we hold that the individual employees represented in the present case have no reasonable expectation that they can keep confidential from their government employer the information requested by the IRS in questionnaire SF-85P.[8]  We take pains to underscore the obvious: we are determining the rights of NTEU members in their capacity as public trust employees and certainly not in their role as ordinary private

---

[8]The questionnaire asks the employee if he has ever experienced problems, on or off a job, from his use of illegal drugs or alcohol.  If the employee gives an affirmative answer, he is then obliged to reveal "the nature of the activity," "any other details relating to" the activity, and "any treatment or counseling received."

citizens.  See Plante, 575 F.2d at 1134-35.  We hold, therefore, that no individual employee represented by the NTEU in this case could have standing to bring a right to privacy claim individually. The NTEU has thus failed to satisfy the first prong of the Hunt test and, therefore, lacks standing to assert its right to privacy claim; the individual plaintiff, Carrie Bravo, thus lacks standing as well.

IV

With respect to both the Fifth Amendment claim and the right to privacy claim, the NTEU has failed to show that its members, or any one of them, has standing individually.  Thus, the NTEU has failed the first prong of the Hunt test for associational standing, and as a necessary corollary, the individual plaintiff, Carrie L. Bravo, has also failed to establish standing.  We therefore reverse and vacate the judgment of the district court and remand for entry of judgment accordingly.

REVERSED and VACATED.